J-A03039-18

2018 PA Super 97

| | | |
|---|---|---|
| CARMEN ENTERPRISES, INC., F/D/B/A CRUISE HOLIDAYS OF NORRISTOWN & BYEBYENOW.COM TRAVEL STORE | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : : | |
| v. | : : | |
| | : | No. 2241 EDA 2017 |
| MURPENTER, LLC D/B/A UNIGLOBE WINGS TRAVEL | : : : | |
| Appellant | : | |

Appeal from the Order Dated June 16, 2017
in the Court of Common Pleas of Montgomery County
Civil Division at No.:  2002-07223

| | | |
|---|---|---|
| CARMEN ENTERPRISES, INC., F/D/B/A CRUISE HOLIDAYS OF NORRISTOWN & BYEBYENOW.COM TRAVEL STORE | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| | : | No. 2341 EDA 2017 |
| MURPENTER, LLC D/B/A UNIGLOBE WINGS TRAVEL | : : : | |
| Appellee | : | |

Appeal from the Order Entered June 16, 2017
in the Court of Common Pleas of Montgomery County
Civil Division at No.:  02-07223

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

OPINION BY PLATT, J.:                    **FILED APRIL 25, 2018**

_____
* Retired Senior Judge assigned to the Superior Court.

In cross-appeals, Appellant, Carmen Enterprises, Inc., f/d/b/a Cruise Holidays of Norristown & Byebyenow.com Travel Store, and Appellee, Murpenter,[1] LLC, d/b/a Uniglobe Wings Travel, both challenge the award of counsel fees in this collection case. Bruce J. Chasan, Esq., the chief litigator for Carmen in this long running suit, was also the president and sole shareholder of Carmen. The trial court awarded Carmen over $45,000 for breach of contract. Carmen also sought legal fees, for Chasan's services, of more than a million dollars. Murpenter maintained that Chasan, as Carmen's principal counsel and owner, was essentially representing himself and Carmen is not entitled to counsel fees for *pro se* representation. The trial court denied the fee request, citing a similar conclusion by a preceding judge, as the law of the case. On appeal, a majority of a panel of this Court disagreed. It affirmed the rest of the trial court's verdict, but reversed the denial of fees for Chasan, and remanded for the trial court to determine a reasonable fee.[2] After hearings, the trial court awarded Carmen $450,400 for legal fees. Both parties appealed. We discern no plain error or palpable abuse of discretion in the trial court's award. Accordingly, we affirm.

_____

[1] Murpenter is an apparent contraction of the surnames of the two principals, Kate Murphy and R. Douglas Carpenter. Murphy and Carpenter appear to be husband and wife.

[2] (*See Carmen Enterprises, Inc. v. Murpenter, LLC*, No. 1115 EDA 2014, (Pa. Super. filed August 12, 2015) (unpublished memorandum), *appeal denied*, 141 A.3d 477 (Pa. 2016)).

This convoluted case has continued for sixteen years. We limit our discussion of the facts, as far as practicable, to those most relevant to the issues raised in this appeal. We derive these facts from the trial court's opinions, our predecessor panel's memorandum decision, the bankruptcy court decisions, and our independent review of the record.

The cross-appellants were adversaries in a vigorously contested, lengthy collection case arising out of the sale and purchase of various designated assets of Carmen's travel agency, formerly the Chasan "family business."[3] (Carmen's Brief, at 30). In late 2001, Carmen sold the assets to Murpenter. The Purchase and Sale Agreement, dated October 31, 2001, set the consideration at $15,000 (plus certain commissions), and payment by Murpenter to Carmen in more or less monthly installments of $7,500 from September 23, 2001 to April 1, 2002. (*See* Purchase and Sale Agreement, 10/31/01, at ¶¶ 6, 7). The fixed payments were subject to adjustment based on multiple formulas for various categories of paid bookings.

Of special pertinence to this appeal, the agreement also included a provision charging Murpenter with a penalty for late payments and the costs

---

[3] Carmen is the first name of Chasan's "former first wife." (Appellant's Brief, at 30). Originally, they both worked in the business. There is no dispute that at the time of the sale the former family business was solely owned by Chasan as a result of the divorce. He later gave five percent to each of his two children. (*See* N.T. Hearing to Mold Attorneys' Fees, 2/10/14, at 91).

of collection for any unpaid installments, including "reasonable attorney's fees." (***Id.*** at ¶ 13).[4]

Included in the assets sold was an "Active Client Mailing List of over 1900 names and addresses on 'My Advanced Mail List' software." (***Id.*** at ¶ 2.C). About a month after the sale, Murpenter (through Murphy) complained it could not access the customer list, which it also maintained was 35% short. It appears that the entire list was actually available, even though it was in two parts, one on a computer disk accessible through the "My Advanced Mail List Software" and the other on software in the office computer. (***See Carmen Enterprises***, 8/12/15, ***supra*** at *17).

The trial court would eventually find that Carmen had properly performed its duty to deliver the customer list under the terms of the purchase and sale agreement. (***See*** Trial Court Opinion, 6/09/14, at 20-21). Nevertheless, Murpenter objected that the list was deficient. It did not make the installment payment due April 1, 2002, alleging that Carmen had not

---

[4] In its entirety, Section 13 provides as follows:

> **13. Late Fees and Costs of Collection**: Any payment that is more than five calendar days late is subject to an automatic 10 percent late fee. Buyer agrees to pay the cost of any collection suit, including reasonable attorney's fees.

(Purchase and Sale Agreement, ¶ 13).

provided the list of 1900 active customers, as promised in the agreement. (*See Carmen Enterprises*, 8/12/15, *supra* at *1).

For a portion of the time relevant to this litigation, Chasan was employed as a patent lawyer in a Center City Philadelphia intellectual property law firm.[5] On April 17, 2002, Chasan filed suit against Murpenter on behalf of Carmen. The complaint contained **fifteen** allegations ranging from non-payment of the April installment to spilled coffee.[6] As our predecessor panel diplomatically put it, "[e]xtensive discovery and motions proceedings ensued." (*Id.* at 5). An avalanche of motions, answers, supplements to motions, demands for discovery, demands for sanctions, motions *in limine* and counterclaims ensued. Murpenter counterclaimed, *inter alia*, for fraud. It also moved

---

[5] In 2012, Chasan left the firm and began a solo practice.

[6] The fifteen counts included seven counts for various allegations of breach of contract (failure to pay monthly installment, late payment of installments, failure to forward commissions paid, failure to pay pro-rated rent and utilities, *etc.*), one count for failure of specific performance (failure to pay for yellow pages advertising), replevin (failure to return computer disk containing customer mailing list), another count for failure of specific performance (failure to provide Saturday access to monthly sales reports for audit by Chasan), breach of "implied contract" (failure to do client mailings to promote bookings), trespass/property damage (replacement of computer keyboard due to coffee spill), conversion (use of **one ream** of Carmen/Cruise Holiday letterhead without permission), and interference with contractual obligations (alleging "willful, obstinate and outrageous" withholding of client files Chasan wanted to see on Saturdays to audit commissions owed to former Carmen employees). (*See* Complaint, 4/17/02, at 1-12).

unsuccessfully to have Chasan removed as counsel for Carmen. Carmen's motion for summary judgment was denied. And so on.

Annoyed at what he appears to have viewed as Murpenter's overly-aggressive defense tactics, early on in the suit Chasan wrote Murpenter's chief counsel, Ely Goldin, Esq., and in effect, threatened him with the prospect of a "very large award of attorney's fees" at the "very substantial" hourly rate set for him at his law firm. (Carmen's Brief, at 14) (record citation omitted).[7]

A week before trial was originally set to begin, Murpenter filed for bankruptcy. After seven weeks or so, the automatic stay was lifted. The bankruptcy court ultimately found that Murpenter had filed its petition in bad faith.[8]

---

[7] (**See also** Appellant's Brief, at 33) ("Chasan is indeed angered by the meritless defense tactics in this case, which have dragged this matter out more than [fifteen] years.").

[8] Additionally, of particular interest for the issues in this review, Attorney Chasan received an **explicit rebuke** from the bankruptcy judge for a sanctions request billed in excess of $85,000 for his attorney time, which the judge characterized as "astronomical." (**In re Murpenter, LLC**, Case No. 2012, 13296-ELF, 7/30/12, at *13). The judge estimated that Attorney Chasan's request was about ten times what a proficient bankruptcy practitioner would charge for the same services. He awarded $4,694.00. On appeal, the district court affirmed. The Chief Judge added specifically that Chasan's motion was "overly lengthy, rambling, and yes, 'prolix'." (**In re Murpenter LLC**, No. 12-CV-5060, 2012 WL 6645538, at *5 (E.D. Pa. Dec. 21, 2012) (unpublished memorandum), *affirmed*, 550 F. App'x 114 (3d Cir. 2014)). Furthermore, the court found Attorney Chasan's timesheets to be "**beyond excessive and so disproportionate to the concept of reasonableness as to raise significant questions regarding Carmen's**

Eleven years after the original complaint, and numerous delays, (including the bankruptcy), the parties proceeded to a three-day bench trial in April of **2013**. Chasan testified as a witness. Otherwise, he acted as Carmen's chief trial counsel.

The trial court awarded Carmen $45,057.47.[9] Carmen filed a motion to mold the verdict to include attorney fees for Chasan's legal services, in excess of one million dollars.[10] The trial court denied the motion. The parties cross-appealed.

On that appeal, as previously mentioned, a predecessor panel of this Court reversed the denial of legal fees for Chasan's services, and remanded for the trial court to determine a reasonable fee. (**See Carmen Enterprises**, 8/12/15, **supra** at *11). Notably, in all other respects, this Court affirmed. (**See id.** at *18).[11] On remand, after two days of hearings, the trial court set

_____

**counsel's judgment and his own good faith**." (**Id.**). (emphasis added) (footnote omitted).

[9] The final order of judgment totaled $160, 833.34. (**See** Trial Ct. Op., at 9 n.7).

[10] Specifically, Carmen requested a fee of $1,180,710 for Chasan's legal services, 2,623.8 hours expended at a billable rate of $450 an hour. (**See** Memorandum and Order, filed 6/16/17, at 5). This is over **twenty-six times** the underlying award.

[11] The panel also concluded there was insufficient evidence to support the grant of Carmen's post-verdict motion for sanctions. (**See Carmen Enterprises**, 8/12/15, **supra** at *14).

Chasan's fees at $405,400.00. (***See*** Memorandum and Order, dated June 15, 2017, filed 6/16/17, at 10).

The award reflected a deduction of billable hours for a variety of activities claimed by Chasan (*e.g.*, 45.9 hours at $450 an hour, or **$20,655**, for in-person **hand delivery by Chasan** to the courthouse of motions and other documents for filing). Among numerous other claims, Carmen sought $226,215 in fees (over **five times** the underlying award) for services rendered by Chasan **following** the trial (even though he had engaged other counsel for the appeal). The trial court observed that "[t]he amount of hours Chasan is claiming he performed on appeal **strains credulity**." (***Id.*** at 9) (emphasis added).

The trial court also reduced, *sua sponte*, Chasan's claimed hourly billing rate from $450 an hour to $200.00 an hour. Two hundred dollars an hour was the hourly rate Chasan paid to other lawyers, (*e.g.*, Gary Mezzy, Esq. and Alan Kane, Esq.), who assisted him in this case. (***See Id.*** at 6; ***see also*** Carmen's Brief, at 27).

Chasan testified (and continues to maintain through Carmen on appeal) that $450.00 an hour was the billing rate set for his work as a patent lawyer in 2009 when he made partner in the Center City Philadelphia intellectual

property law firm. (**See** Appellant's Brief, at 15).[12] He testified further that he did the work for Carmen on evenings and weekends, to avoid problems with other members of his firm.[13] (**See** Memorandum and Order, **supra** at 6 n.13).

After the trial court filed its order on the fee issue, Murpenter filed a notice of appeal. Carmen filed a motion for reconsideration and a self-designated "protective" notice of appeal.

Both parties filed a statement of errors pursuant to Pennsylvania Rule of Appellate Procedure 1925. The trial court filed a letter on September 20, 2017, directing the attention of this Court to its Memorandum and Order dated June 15, 2017 for the reasons underlying its decision. **See** Pa.R.A.P. 1925.

Carmen presents nine questions for our review:

> 1. Whether the Order appealed from is a final, appealable order[?]
>
> 2. Whether the [c]ourt erred in not adding other contractual damages including the post-2/10/2014 attorney's fees of Messrs. Scutti, Backstrom and Judge Klein (Ret.), and also expenses, and in not re-molding the verdict (decision)[sic][?]

---

[12] Carmen reports Chasan's prior billing rate as an associate, from 2002 to 2009, was $340 an hour. (**See** Appellant's Brief, at 15). Chasan did not testify to and Carmen did not provide any other evidence of the billing rate for legal work performed in Chasan's solo practice. (**See** Memorandum and Order, at 5).

[13] Nevertheless, the correspondence and document filings in the record from the bankruptcy proceedings bear the letterhead of the law firm where Chasan then worked.

3. Whether the [c]ourt erred in reducing Chasan's billing rate from $450/hour to $200/hour because (a) there was substantial evidence supporting the $450 rate; (b) Murpenter did not contest the $450 rate; (c) Murpenter offered no evidence to support any other rate; and (d) other grounds enumerated in Plaintiff's Motion and Brief in Support for Partial Reconsideration[?]

4. Whether the [c]ourt erred in reducing Chasan's claimed hours by 15.5 hours in connection with an interlocutory appeal because Carmen did not, in fact, claim the 15.5 hours[?]

5. Whether the [c]ourt erred in reducing Chasan's claimed hours by 25 hours for preparation of jury instructions "in a non-jury case," and by 71.7 hours for preparation of motions *in limine* "in a bench trial," because the work was timely performed pursuant to scheduling orders by Judge Bertin for a jury trial, and it was only later the parties agreed to a non jury trial[?]

6. Whether the [c]ourt erred in reducing Chasan's claimed hours by 13.1 hours for review of documents in preparation for depositions of Murpenter's principals (Murphy and Carpenter) in October 2002 where 94 exhibits were marked and inquired about[?]

7. Whether the [c]ourt erred in reducing Chasan's claimed hours by 244.8 hours for "excessive, serial and unsuccessful" motions for sanctions (quoting Murpenter's brief on "reasonableness") because the [c]ourt misapprehended the record; because it held it was necessary for Carmen to file discovery motions due to Murpenter's disregard of discovery rules and multiple violations of court orders; because the 244.8 hours were not sufficiently identified by Murpenter, and said hours also included hours that Carmen did not claim (*e.g.*, post-trial sanctions motions); and because Murpenter concealed the Nov. 28 disk and misled the [c]ourt[?]

8. Whether the [c]ourt erred in reducing Chasan's claimed hours by 14.3 hours for preparation for a sanctions hearing in June-July 2004[?]

9. Whether the [c]ourt erred in reducing Chasan's hours spent on the appeal from 308.5 hours to only 150 hours because the [c]ourt misapprehended the record (regarding the 502.7

hours on the timesheet between 3/8/2014 and 9/4/2016); because the [c]ourt erred by excluding 92.5 hours that were unrelated to the appeal, and because the 401 hours that were claimed included both trial court work and appellate work (not 502.7 hours as misstated by the [c]ourt, as the [c]ourt overlooked that 102.9 hours were not claimed by Carmen because they related to the post-trial sanctions motions that were denied)[?]

(Carmen's Brief, at 3-4).

Murpenter presents five counter-questions on appeal:

1. Did the [t]rial [c]ourt commit an error of law or abuse its discretion in awarding Carmen an amount of attorney's fees above zero dollars for Mr. Bruce J. Chasan ("Chasan") when Carmen and Chasan had no written fee agreement, no invoices were sent by Chasan to Carmen, no fees were charged by Chasan, and such fees were not actually incurred or paid by Carmen as costs?

2. Did the [t]rial [c]ourt commit an error or [sic] law or abuse its discretion in awarding Carmen an amount of attorney's fees for Chasan that applied to non-contractual claims for which Carmen did not recover at trial and defenses to Murpenter's counterclaims?

3. Did the [t]rial [c]ourt commit an error or [sic] law or abuse its discretion in failing to adopt the correct test for evaluating fee requests and awarding Carmen an amount of attorney's fees for Chasan that Carmen did not prove to be reasonable, grossly exceeded the underlying contractual damages in this case, and did not properly account for all of the factors recognized by the Pennsylvania Supreme Court for evaluating fee requests?

4. Was the [t]rial [c]ourt within its discretion to reduce Chasan's hourly rate in determining the attorney's fees awarded to Carmen for Chasan's time?

5. Is the Fee Order a final and appealable order when this Court remanded this matter to the [t]rial [c]ourt for a reasonableness determination of Chasan's fees and the [t]rial [c]ourt determined those fees?

(Appellee's Brief, at 5-6).

Preliminarily, with particular regard to Carmen's claims, we are reminded of the observation by the late Honorable Ruggero J. Aldisert, formerly Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, that this Court has often previously cited:

> When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy. **Appellate advocacy is measured by effectiveness, not loquaciousness**.
>
> **see also Commonwealth v. Snyder**, 870 A.2d 336, 340 (Pa. Super. 2005) ("[T]he effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them.").

**J.J. DeLuca Co. Inc. v. Toll Naval Assocs.**, 56 A.3d 402, 409–10 (Pa. Super. 2012) (some citations omitted) (emphasis added).

Carmen's first claim is that the order appealed from is not a final, appealable order. (**See** Appellant's Brief, at 3). Carmen asserts that the order did not dispose of all claims and all parties. (**See id.** at 11). It maintains that **both** appeals should be quashed. (**See id.** at 9, 58). We disagree.

"The extent to which the order of a trial court is appealable raises a question of law; thus, our scope of review is plenary and our standard of review is de novo." **Fastuca v. L.W. Molnar & Assocs.**, 950 A.2d 980, 986 (Pa. Super. 2008), affirmed, 10 A.3d 1230 (Pa. 2011) (citation omitted).

"Moreover, '[b]ecause the question of appealability implicates the jurisdiction of [this] Court, a non-waivable matter, we are not only permitted

but required to determine the appealability of the order that we have been asked to review.'" ***Knisel v. Oaks***, 645 A.2d 253, 255 (Pa. Super. 1994) (citation omitted).

Carmen argues that the order is not final and appealable, giving the trial court jurisdiction to consider its motion for reconsideration. (***See*** Appellant's Brief, at 12). This Court remanded to the trial court for the determination of a reasonable fee for Chasan's legal services. The trial court did so. "An order allowing counsel fees is a final, appealable order." ***In re Roos' Estate***, 451 A.2d 255, 255 n.1 (Pa. Super. 1982) (citing ***Henderson v. Henderson***, 327 A.2d 60 (Pa. 1974)).[14]

Furthermore, the claim would not merit relief because our predecessor panel affirmed the trial court's decision on Carmen's claims in all respects, (including fees for other counsel), except for Carmen's claim for Chasan's legal fees. (***See Carmen Enterprises***, 8/12/15, ***supra*** at *6-7, *15, *18). Thus, once Chasan's fee claim was decided, there was no other issue left to resolve. (***See id.*** at *18).

The trial court's final order, which disposed of the only remaining issue, was entered in the docket on June 16, 2017. Where judgment is entered in

---

[14] ***See also Cheathem v. Temple Univ. Hosp.***, 743 A.2d 518, 520 (Pa. Super. 1999) ("mere filing of a petition requesting reconsideration of a final order of the trial court does not toll the normal 30-day period for appeal from the final order").

the underlying litigation before the trial court rules on a motion for counsel fees, the order on counsel fees is appealable when entered without the need for entry of judgment on it. ***See Miller Elec. Co. v. DeWeese***, 918 A.2d 114, 114 (Pa. 2007). Carmen's first claim would fail on the merits.

In its second claim, Carmen assigns error to the trial court for not re-molding the verdict to include attorney fees for Chasan's services, and for not adding in other damages. (***See*** Carmen's Brief, at 3, 13). We disagree.

The issue of whether a trial court properly interpreted the scope of a remand order is a matter of law. ***See In re Lokuta***, 11 A.3d 427, 438 (Pa. 2011), *cert. denied*, 565 U.S. 878 (2011). As in all appeals raising matters of law, "our standard of review is *de novo,* and our scope of review is plenary." ***Schwartz v. Rockey***, 932 A.2d 885, 891 (Pa. 2007).

"[A] trial court has an obligation to comply scrupulously, meticulously, and completely with an order of [the appellate court] remanding a case to the trial court." ***Commonwealth v. Williams***, 877 A.2d 471, 474 (Pa. Super. 2005), *appeal denied*, 895 A.2d 1261 (Pa. 2006) (citation omitted). The trial court is required to "strictly comply with the mandate of the appellate court." ***Id.*** at 474–75 (citation omitted). Issues not included in the mandate **cannot be considered** by the trial court. ***See id.*** at 475.

Here, the trial court properly addressed the issue remanded by our predecessor panel, Carmen's claim to a fee for Chasan's legal services. Issues

beyond Chasan's fee are beyond the mandate for review. Carmen's second issue does not merit relief.

The remainder of Carmen's issues challenge the reduction of the fees it claimed for Chasan's legal services. Our standard of review and the factors to be considered in a claim for legal fees are well-settled.

> What is a fair and reasonable fee is sometimes a delicate, and at times a difficult question. The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question. A larger fee than usual is likewise frequently awarded when an attorney "creates" a fund.
>
> **By now it is hornbook law that the reasonableness of the fee is a matter for the sound discretion of the lower Court and will be changed by an appellate Court only when there is a clear abuse of discretion.**

*In re LaRocca's Trust Estate*, 246 A.2d 337, 339 (Pa. 1968) (citations and footnote omitted) (emphasis added). This Court has further explained:

> We have a limited power of review of court awarded fees. As the Supreme Court has so frequently stated, the responsibility for setting such fees lies primarily with the trial court and we have the power to reverse its exercise of discretion only where there is plain error. Plain error is found where the award is based either on factual findings for which there is no evidentiary support or on legal factors other than those that are relevant to such an award. The rationale behind this limited scope of review is sound. **It is the trial court that has the best opportunity to judge the attorney's skills, the effort that was required and actually**

- 15 -

> **put forth in the matter at hand, and the value of that effort at the time and place involved.**

*Gilmore by Gilmore v. Dondero*, 582 A.2d 1106, 1108–09 (Pa. Super. 1990) (citations omitted) (emphasis added).

As noted by the trial court, the burden is on the claimant to justify a fee request. (*See* Memorandum and Order, at *4 (citing *Gilmore*, *supra* at 1110)). The trial court does not have to address every *LaRocca* factor. *See Gilmore, supra* at 1110 ("Consideration of **any one or a combination** of the *LaRocca* factors may convince the court that a different fee is justified.") (emphasis added).

Additionally, it has long been the law of Pennsylvania that attorney's "[f]ees should be on a moderate scale of compensation, and none should be allowed but such as are fair and just." *In re Huffman's Estate*, 36 A.2d 640, 643 (Pa. 1944) (citations omitted).

In its third claim, Carmen challenges the trial court's *sua sponte* reduction in the billable hourly rate claimed by Chasan, from $450 an hour, to $200 an hour. (*See* Carmen's Brief, at 13-34). Carmen argues chiefly that the $450 rate was uncontested, because Murpenter's counsel stipulated generally to the rates claimed for Carmen's counsel, and, Carmen contends, the rate was supported by substantial evidence. (*See id.* at 18). We disagree.

Most importantly, Carmen misapprehends our standard of review, which is deferential and reviews the trial court's award only for an abuse of discretion. *See LaRocca*, *supra* at 339; *Gilmore*, *supra* at 1108–09.

Contrary to Carmen's assumption, the acquiescence of opponent's counsel, (**see** Hearing to Mold Attorneys' Fees, 2/10/14, at 113), is not dispositive of what amount the trial court may decide is "fair and reasonable," and is not responsive to the abuse of discretion standard of review.

Furthermore, it bears noting that in this case opposing counsel's "concession" on Chasan's billing rate came in the context of her over-arching argument that **Carmen was not entitled to any attorneys' fees at all**, and her companion argument that **Carmen had failed to meet its burden of proof** on whether the services provided by Chasan were reasonable and necessary. (**See id.** at 112-13). Viewed in that context, counsel obviously chose to focus on the reasonableness of the hours claimed, rather than dilute the force of her argument by also contesting hourly rates.

Counsel was entitled to make this choice as a matter of litigation strategy. However, her strategic choice did not, as Carmen claims, preclude the trial court from performing its judicial duty to decide the reasonableness and the fairness of the fee request. Nor does it constrain our appellate review.

In support of its fee claim, Carmen also offered a rate sheet from Chasan's former law firm, and a fee schedule from Philadelphia Community Legal Services (CLS). (**See** Carmen's Brief, at 14-15, 17-18). Carmen offered no expert testimony in support of Chasan's claim to $450 an hour. Carmen had no written fee agreement with Chasan, and Chasan never submitted an

invoice to Carmen for his services.[15] (***See*** Memorandum and Order, at 1; ***see also*** N.T. Hearing to Mold Attorneys' Fees, 2/10/14, at 96-97).

Carmen's argument that the CLS fee schedule should apply to Chasan because "'[t]he law' certainly encompasses fee-shifting contracts as well as fee-shifting statutes[,]" (Carmen's Brief, at 18), is totally unsupported and equally unpersuasive. The CLS fee schedule is primarily for the benefit of CLS, and secondarily a reference for lawyers who have prevailed in a public interest cause of action. ***See Maldonado v. Houstoun***, 256 F.3d 181, 183-84 (3d Cir. 2001) (providing, in court's discretion, a **reasonable** attorney's fee to prevailing party in 28 U.S.C. § 1983 civil rights action); ***see also Rainey v.***

---

[15] We have not overlooked Carmen and Chasan's apparent general disregard, as evident in the record before us, for the observance of proper formalities in the conduct of Carmen's corporate activities, as argued by Murpenter. (***See*** Appellee's Brief, at 19); ***see also*** Appellant's Brief, at 15: ("Any written agreement would have been artificial and unnecessary."). Carmen even appears on occasion to use their names almost interchangeably. (***See, e.g.***, Appellant's Brief, at 32 (at "trial . . . **Carmen decided** Chasan would handle the other witnesses"); ***id.*** at 40, ("**Carmen** concedes it was disappointed . . . .") (emphases added)). It is axiomatic that a corporation can act only though its officers, employees, and other agents. ***See Scampone v. Grane Healthcare Co.***, 169 A.3d 600, 608 (Pa. Super. 2017). Absent any evidence of proper formal authorization of corporate action, (*e.g.*, a corporate resolution, minutes of shareholder's meeting, *etc.*), most of Chasan's efforts to simulate proper and valid corporate action by imputing human acts to Carmen are legally frivolous and verge on the ludicrous. (***See e.g.*** Carmen's Brief, at 14) ("Carmen and Chasan had a mutual understanding . . ."); (***id.*** at 15 ("Carmen decided to file a complaint"); ("Carmen and Chasan agreed to terms, including an agreed billing rate."). Nevertheless, it appears that Murpenter did not present and develop any "*alter ego*" issue at trial, or seek to pierce the corporate veil. Therefore, we disregard further consideration of corporate veil or *alter ego* issues for the purpose of our analysis and decision.

*Philadelphia Hous. Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993) (also a § 1983 action).

Here, Carmen's suit involved a purely private commercial claim. There is no statutory basis for the award of attorney fees, such as found in the Unfair Trade Practices and Consumer Protection Law (UTPCPL), (73 P.S. § 201—9.2(a)), much less a civil rights claim or the vindication of a constitutional right. **Compare Neal v. Bavarian Motors, Inc.**, 882 A.2d 1022, 1026 (Pa. Super. 2005), *appeal denied*, 907 A.2d 1103 (Pa. 2006) (UTPCPL); **Solebury Twp. v. Dep't of Envtl. Prot**., 928 A.2d 990, 998 (Pa. 2007) (Clean Streams Law).

Carmen's unsupported claim of a state mandate to enforce a purely contractual fee claim is frivolous. The trial court correctly concluded that Carmen's and "Chasan's reference to the fee schedule used by Community Legal Services of Philadelphia in statutory fee-shifting cases is not applicable here." (Memorandum and Order, at 6 n.14).

Similarly, the affidavit of another attorney employed by Chasan, recounting what fee **he** received in an entirely **unrelated** case, does not meet Carmen's burden of proof or substitute for legal analysis and argument in support of Carmen's claim that Chasan's request for legal fees in **this** case is fair and reasonable. (**See** Affidavit of Alan B. Kane, Esq. In Support of Plaintiff's Motion for Partial Reconsideration, *etc.*, 6/22/17, at 3-4; **see also** Appellant's Brief, at 19-20).

As already noted, Carmen claims the benefit of Chasan's rate at his former law firm. However, what Chasan's former law firm may have chosen to charge for his specialized services **as a patent lawyer**, in 2009, in unspecified market conditions, with the tacit necessity of paying for the firm's support staff and other overhead, bears little to no relevance here.

Preliminarily, this is not a patent case. Whether Chasan's claimed rate as an intellectual property lawyer was reasonable for the general legal work he chose to perform himself for his own wholly-owned corporation, on evenings and weekends, in the litigation of this rather straightforward collection case was still an issue for the trial court to decide. The trial court properly took into consideration Chasan's testimony that his representation of Carmen was totally separate and unconnected to his work at the intellectual property firm.

Even more importantly, Carmen attempts to justify the $450 hourly rate by citing a federal case, not binding on this Court, holding that the applicable rate for an attorney's fee is the rate **at the time of the filing of the fee petition** (on a theory of delayed compensation). (**See** Appellant's Brief, at 28 (citing **Lanni v. State of New Jersey**, 259 F.3d 146, 149) (3d. Cir. 2001). Carmen filed the fee request on July 19, 2013. Notably, by his own admission Chasan **left his former law firm in 2012**, a year earlier.

Applying **Lanni**, as Carmen would have us do, Chasan's rate at the time of the filing of the petition was **not** his former firm rate. Instead, it would

have been the rate he charged in his solo practice. Notably, Chasan did **not** present evidence of his solo practice billing rate to the trial court. (**See** Memorandum and Order, at 5). Carmen was not entitled to reference Chasan's 2009 patent law rate to support his fee claim in the 2013 petition.

Carmen's brief also makes much of Chasan's patent litigation skills and the length of time he has been in practice. (**See** Appellant's Brief, at 17, 27-28, 33). However, the *de facto* self-assessment (often at the expense of the other lawyers who assisted him)[16] is moot, because the issues here did not involve patent law. Similarly, generalized references to Chasan's "numerous career accomplishments," and "numerous achievements" in the brief, (Appellant's Brief, at 33), do not, and cannot, substitute for a well-reasoned, dispassionate examination of the fairness and reasonableness of the fees claimed in light of the **LaRocca** factors.

Furthermore, it was well within the broad discretion of the trial court to reduce Chasan's claimed partner-level hourly rate for non-specialized administrative tasks he chose to do himself, such as his personal delivery of court filings or routine document preparation and review. (**See** Memorandum and Order, at 8); **see also In re Huffman's Estate**, **supra** at 643 ("Fees should be on a moderate scale of compensation, and none should be allowed

_____

[16] (**See, e.g.**, Appellant's Brief, at 17) ("[N]either Backstrum nor Scutti has ever tried a patent infringement case, which Chasan has.").

but such as are fair and just.") (citations omitted); **LaRocca**, **supra** at 339 ("factors include . . . the character of the services rendered").

On independent review, we have no difficulty or hesitation in concluding that the trial court acted well within the scope of its discretion in finding Carmen's claims unsupported by proper evidence, and in deciding to reduce Chasan's billing rate for the purposes of this collection case litigation. Carmen's third claim fails.

All of Carmen's remaining claims, questions four through nine inclusive, challenge the trial court's reduction in the number of hours claimed. (**See** Carmen's Brief, at 3-5). We address them together. None merits relief.

The common themes of Carmen's argument are that the trial court erred in reducing the number of Chasan's hours because the work was much more complex than the trial court appreciated; that the trial court misapprehended pertinent facts of record, or what services were in fact rendered; and that much of Chasan's reasonable work was necessitated by the "obstreperous and obstinate" trench warfare tactics of Murpenter's chief defense counsel, Ely Goldin, Esq.[17] (Appellant's Brief, at 23, 24; **see also id.** at 34-58). We disagree.

---

[17] (**See, e.g.**, Appellant's Brief, at 26) ("The real story here is not Chasan's reasonable fees; it is the tactics of defense attorney Ely Goldin.").

Preliminarily, we note that Carmen fails to develop an argument in support of its fee claim based on hours worked in light of the **LaRocca** factors. To the contrary, Carmen maintains that the **LaRocca** factors are inapplicable. (**See id.** at 23) ("Clearly, applying the **LaRocca** factors mechanically to a contract fee-shifting case is trying to fit a square peg into a round hole."). Carmen misapprehends the pertinent law.

Furthermore, it is unnecessary, and we decline, to engage in the line-by-line method of analysis employed by Carmen. **See Twp. of Millcreek v. Angela Cres Trust of June 25, 1998**, 142 A.3d 948, 962 (Pa. Cmwlth. 2016), *appeal denied*, 166 A.3d 1236 (Pa. 2017) (citing **In re Appeal of Silverman**, 90 A.3d 771, 785 (Pa. Cmwlth. 2014)) (trial court not required to delineate with specificity to counsel's satisfaction every reason for every disallowance of every aspect of fee request; it is enough if trial court explains its decision in manner sufficient to enable appellate review).[18]

On independent review of the trial court's award in light of the **LaRocca** factors, we find no basis to conclude any error of law or abuse of discretion. Notably, at the fee hearing, Chasan conceded that the amount he sought was

---

[18] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." **Charlie v. Erie Ins. Exch.**, 100 A.3d 244, 253 n.9 (Pa. Super. 2014) (citation omitted).

less than $50,000, and about the amount of the actual verdict of $45,000. (**See** N.T. Hearing, 2/10/14, at 86-87).

Therefore, the threshold issue for Carmen (and Chasan) throughout the litigation had to be (or should have been) the amount of money obtainable in relation to the amount of fees for the reasonable legal services necessary to obtain it. **See LaRocca**, **supra** at 339 ("The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include . . . the amount of money or value of the property in question[.]").

On independent review, most of the other **LaRocca** factors do not specifically apply here or are not in Carmen's favor. **See LaRocca**, **supra** at 339. The collection case did not "make new law." It had no intrinsic importance other than to the parties involved. Carmen (and Chasan) did not "create a fund" from which others could benefit. The character of the services performed, and the results counsel obtained, were not objectively remarkable. Of the nineteen motions Chasan filed, Carmen only obtained the relief requested in two. (**See Carmen Enterprises**, **supra** at *12 n.7; **see also** Appellant's Brief, at 39). The amount of the underlying award was in line with Chasan's conceded expectation.

About the only distinctive feature of this case is the ferocity with which the legal opponents appear to have pursued it. Carmen claims it was forced

to engage in multiple maneuvers to respond to the recalcitrance of Murpenter and its counsel.

We note that the trial court expressly acknowledged that "[I]t was necessary for Chasan to file pre-trial discovery motions due to Murpenter's disregard for the rules governing discovery and multiple violations of court orders." (Memorandum and Order, at 7).

However, after a recitation of the legal services rendered by Chasan for Carmen, (and challenged by Murpenter), the trial court concluded:

> Although **some** of the above services may have been helpful or even necessary, Carmen failed to convince the [trial] court that the **total** hours claimed for these services are reasonable or justified. Accordingly, the court will not include these 511.1 hours in determining a reasonable fee.

(**Id.** at 8) (emphases added).

Moreover, the need-to-respond explanation does not account for Carmen's **original** fifteen-count complaint, which included not only a count for non-payment, but also one count for a ream of letterhead and one for coffee spilled on a keyboard. Carmen filed the opening salvo. It cannot now expect to be rescued from the consequences of its misfired strategy through the expedient of an exorbitant fee request.

On independent review, we discern no error or abuse of discretion in the trial court's ruling. None of Carmen's numerous complaints, many unsupported, marginal or trivial, justify disturbing the decision of the trial court. Carmen's claims merit no further relief.

Murpenter presents five counter-claims. (*See* Appellee's Brief, at 5-6). We have already addressed the fourth (reduction of Chasan's hourly rate) and fifth (final and appealable order) questions in our foregoing review. Murpenter's remaining three questions do not merit independent relief.

In its first claim, Murpenter challenges any fee award over zero. Our predecessor panel has already decided that Carmen was entitled to a reasonable fee for Chasan's services. (*See Carmen Enterprises*, *supra* at *3). Therefore, under the coordinate jurisdiction rule, that decision is the law of the case and binding on us. *See Commonwealth v. Rolan*, 964 A.2d 398, 404 (Pa. Super. 2008). The first claim merits no relief.

In its second claim, Murpenter posits that Carmen could not recover under the contractual fee shifting provision for any claim other than unpaid installments. We disagree.

The record supports the trial court's conclusion that "Murpenter's litigation efforts extended the time and effort required for Carmen to be successful [in its collection claim]." (Memorandum and Order, at 5). Therefore, once Murpenter decided to counterclaim for fraud, deny receipt of the customer mailing list disk until virtually the end of trial, file for bankruptcy in bad faith, resist discovery, ignore court orders, and so forth, its assorted counterclaims became inextricably intertwined with Carmen's collection case.

We discern no abuse of discretion in the trial court's conclusion that Murpenter's multiple litigation efforts extended the time and effort required

for Carmen to be successful in what was at root a "garden variety" collection claim. Carmen is entitled to the **fair and reasonable** legal fees associated with responding to Murpenter's conduct. Murpenter's second claim merits no relief.

Murpenter's third claim, with six sub-parts, posits that Carmen did not prove its claim to be reasonable under the *LaRocca* test. (*See* Appellee's Brief, at ii-iii, 39-64). Murpenter misapprehends our standard of review, which reviews the trial court's award for abuse of discretion. We conclude that the trial court properly applied the *LaRocca* test. We discern no abuse of discretion in the trial court's verdict. Murpenter's third claim does not merit relief.

In particular, Murpenter's insistence that the trial court did not apply the appropriate test for determining reasonable attorney fees, by supposedly failing to consider all of the *LaRocca* factors, is belied by the record, and, frankly, frivolous. Moreover, Murpenter's elongated and contorted argument, (especially its idiosyncratic, implausible and unpersuasive definition of "cost" as limited to fees already paid and collected, precluding an award of attorney fees), is unsupported by **pertinent**, **persuasive** authority, and ignores our standard of review.[19] (*See* Appellee's Brief, at 20-29). In effect, Murpenter

---

[19] *E.g.*, Appellee cites, out of context, an unpublished federal district court judgment order, not binding on this Court, *Wynn v. Lukoil N. Am. LLC*, No. 15-1`66, slip op. at 5-7 (E.D. Pa. filed October 8, 2015). (*See* Appellee's

simply invites us to re-weigh the evidence of record, and reduce the fee awarded by the trial court. This we decline to do.

Our standard of review accords the trial court great deference. *See* *LaRocca*, *supra* at 339 ("reasonableness of the fee is a matter for the sound discretion of the lower Court and will be changed by an appellate Court only when there is a clear abuse of discretion."). This time-honored standard of review reflects a long-standing rule of law, not a single checklist to be applied in the mechanistic fashion envisioned by Appellee. The *LaRocca* Court, quoting *In re Good's Estate*, 24 A. 623 (Pa. 1892), explained:

> The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error[.]

*LaRocca*, *supra* at 548 (collecting cases).

Here, the record strongly supports the inference that Chasan "over-worked" the case, and invited retaliation with his ill-conceived strategy of piling on filings and threatening high legal fees, in apparent hope of forcing a quick settlement or even outright capitulation. However, it also supports the inference that Murpenter's own dilatory tactics, bad faith bankruptcy filing,

---

Brief, at 24; and Addendum E, at 5-7). Even a cursory reading of this case confirms that the court's decision was based primarily on the absence of evidence for the reasonableness of the fees claimed. *See Wynn*, *supra* at *5.

obstruction of discovery, and numerous other deflect-and-delay stratagems, prolonged and compounded what could have been, (and probably should have been), a relatively straightforward $45,000.00 collection case. Murpenter cannot and should not escape the consequences of its actions any more than Carmen can.

Under our standard of review, we defer to the trial court for the determination of how much those tactics affected the size of the fee award. On independent review, we discern no error of law and no abuse of discretion in the decision of the trial court. *See LaRocca*, *supra* at 339; *Huffman's Estate*, *supra* at 643; *Gilmore*, *supra* at 1108–09.

Our reasoning differs slightly from the trial court on certain issues. However, we can affirm the trial court's order on any basis if the result is correct. *See Lerner v. Lerner*, 954 A.2d 1229, 1240 (Pa. Super. 2008) (affirming trial court's order on different grounds).

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/18