J-S31014-25

J-S31015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LINDA BARSIK, SEAN BARSIK, ERNESTINA BARSIK, KATTINA BARSIK, THE GROTTO, LLC, D/B/A THE BOOKSTORE SPEAKEASY AND ELKS HOLDINGS | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : : : | No. 541 EDA 2025 |
| JOSEPH M. RICHIE AND HELENA I. RICHIE | : : | |

Appeal from the Judgment Entered December 9, 2024
In the Court of Common Pleas of Northampton County
Civil Division at No(s):  C-48-CV-2020-07743

| | | |
|---|---|---|
| JOSEPH M. RICHIE AND HELENA I. RICHIE | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : : : | |
| THE GROTTO, LLC  LINDA BARSIK, SEAN BARSIK, ERNESTINA BARSIK, KATTINA BARSIK, THE GROTTO, LLC, D/B/A THE BOOKSTORE SPEAKEASY, AND ELKS HOLDINGS, LLC | : : : : : : : : : | No. 23 EDA 2025 |
| v. | : : : : : | |
| JAMES I. RICHIE, JOSEPH M. RICHIE AND HELENA I. RICHIE | : : : : : | |

J-S31014-25

J-S31015-25

APPEAL OF: LINDA BARSIK, SEAN       :
BARSIK, ERNESTINA BARSIK,           :
KATTINA BARSIK, THE GROTTO,         :
LLC, D/B/A THE BOOKSTORE            :
SPEAKEASY, AND ELKS HOLDINGS,
LLC

Appeal from the Judgment Entered December 9, 2024
In the Court of Common Pleas of Northampton County
Civil Division at No(s):  C-48-CV-2019-05312

BEFORE:  PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.:            **FILED NOVEMBER 13, 2025**

Linda Barsik, Sean Barsik, Ernestina Barsik, Kattina Barsik, The Grotto,

LLC, d/b/a The Bookstore Speakeasy, and Elks Holdings, LLC (collectively

"Appellants") appeal[1] from the final judgment entered by the Northampton

County Court of Common Pleas on December 9, 2024. Appellants take issue

with the court's denial of Appellants' post-trial motion to expand the record,

and Appellants' motion for post-trial relief, in which Appellants sought to

vacate the court's verdict against The Grotto and in favor of James I. Richie,

Joseph M. Richie, and Helena I. Richie (collectively "Appellees"). After careful

review, we affirm.

---

[1] Instantly, Appellants filed separate notices of appeal under both of the lower court dockets involved. Notably, these two dockets were consolidated for trial and, following the consolidated non-jury trial, the court issued a single order resolving all claims and counterclaims presented under both dockets. Further, the trial court consolidated the cases for review of post-trial motions. As we find the appeals involve common questions of law and fact arising from the same series of transactions, we have consolidated the appeals *sua sponte* for review as well.

- 2 -

The trial court thoroughly summarized the factual and procedural background of this matter as follows:

The above-captioned disputes arise from protracted contract negotiations between Joseph, James, and Helena Richie and Linda, Sean, Ernestina, and Kattina Barsik (collectively the "Barsiks") for the sale of both the properties located at 25-27-29 E. 4th Street, Bethlehem, PA and 336 Adams St., Bethlehem, PA (collectively the "Properties") and The Grotto, LLC ("The Grotto" or the "Business["]). When negotiations began, James Richie was the sole member of The Grotto, a Pennsylvania limited liability company, that operates The Bookstore Speakeasy restaurant in the south side of Bethlehem. The Bookstore Speakeasy operates out of [the Properties]. Joseph and Helena Richie, James' brother and sister-in-law, are the titled owners of the Properties.

Initially, Elks Holdings, LLC ("Elks Holdings"), a Pennsylvania limited liability company created by the Barsiks, entered into a Standard Agreement for the Sale of Real Estate ("Property Agreement") with Joseph and Helena for the Properties[,] and the Barsiks, individually, agreed to the Business Entity Purchase Agreement ("BEP Agreement") to obtain James' membership interest in The Grotto. Kristofer Metzger, Esquire initially represented Elks Holdings and the Barsiks during early negotiations, while the Richies proceeded without representation.

The Property Agreement states Elks Holdings would purchase the Properties for a sum of $550,000 with a mortgage contingency clause. Elks Holdings had until June 15, 2017 to obtain financing. The Settlement Date was to be determined by the BEP Agreement. The Property Agreement further provides, "[t]his Agreement and settlement hereunder is contingent upon the sale and settlement of a [BEP] Agreement intended to be executed simultaneously herewith .... In the event said [BEP] Agreement is not consummated for any reason, this Agreement shall also be null and void ...."

The BEP Agreement, on the other hand, provides that the Barsiks were to purchase James' membership interest in The Grotto for $650,000. James Richie, individually and as sole member of The Grotto, is listed as the Seller while the Barsiks are named as the Buyers. The Barsiks agreed to provide an initial deposit of $25,000 along with a payment of $275,000 at settlement. The remaining

- 3 -

balance was to be furnished pursuant to a Note and secured by a mortgage to James for $350,000. The BEP Agreement also states that settlement was to occur within thirty (30) days from when the Barsiks received approval from the Liquor Control Board regarding the transfer of The Grotto's liquor license or, at the latest, July 15, 2017. Closing on the BEP Agreement was made contingent upon both the Barsiks obtaining a commercial loan and/or mortgage to satisfy the terms of the Property Agreement and if the Property Agreement proceeded to closing.

The parties decided that any mutually agreed to modifications of either agreement, including any extension of the closing date, had to be in writing and signed. The Barsiks' attorney contacted the Richie[]s about one thirty-day extension of the due diligence period on May 1, 2017, to which James agreed via email. Attorney Metzger testified that no further extensions of the due diligence period, or closing dates, was ever reduced to writing.

Elks Holdings submitted numerous mortgage applications in an attempt to gain financing. For one of the applications, Sean notified James that the financial institution asked for updated leases for the Properties, including the lease between The Grotto, Joseph, and Helena. [The Grotto, Joseph, and Helena originally entered into a lease agreement beginning in January 2013 for a term of three (3) years at a rental value of $4,000 per month. This was what originally was provided to Sean for the mortgage applications.] James prepared a new lease between The Grotto and Joseph for a term of ten (10) years with a rental value of $4,000 per month. Paragraph 3(C) provides that "[i]n the event tenant should break this lease without the written permission of the LANDLORD, the unpaid rent for the remainder of this lease will become immediately due and owing ...." The Lease Agreement also allows the landlord to recover reasonable legal fees and costs for "any legal actions relating to the payment of rent or the recovery of the property." Joseph executed the new lease on July 1, 2017. James then furnished the updated lease to Sean who forwarded the document to the financial institution to bolster the pending mortgage application.

Elks Holdings's mortgage applications were ultimately denied and closing on both agreements did not occur on July 15, 2017. Shortly thereafter, James proposed, and the Barsiks agreed, to move forward on the purchase of The Grotto for the price originally

stated in the BEP Agreement and the Barsiks acquired The Grotto on August 7, 2017.

Around September 2017, Linda testified that James approached her about a proposal for the purchase of the Properties. James proposed that the Barsiks should continue to make monthly payments of $4,000 per month to hold the purchase price of $550,000. Linda also alleges that James assured her that all monies paid would ultimately be credited towards the final price. Linda testified she asked to memorialize the agreement in writing through Attorney Metzger, but James refused to because the parties were "just going to continue moving forward." Linda conceded, on cross-examination that no such agreement was ever reduced to writing. Both James and Joseph denied ever proposing, or agreeing to, said terms. The Grotto proceeded to make timely monthly payments of $4,000 from September 2017 until February 2019.

On March 19, 2018, Sean Barsik emailed two proposed agreements of sale for the purchase of [the Properties] to Joseph [Richie]. Joseph and Helena [Richie] rejected these offers, as they found the figures to be outdated based upon current market values. On January 12, 2019, Sean and Linda [Barsik] met with Joseph and Helena to tender a new offer for the purchase of the Properties. Sean and Linda offered a draft agreement, between Joseph and Helena and Shawkat M. Barsik[, Sean and Linda's father], for the purchase of [the Properties] for a total of $350,000. The purchase price purportedly included "Goodwill Rent Paid to Date" and "Grotto LLC Purchase (Restaurant)." Joseph and Helena were unaware of what these so called "goodwill rent payments" represented, and ultimately rejected this final offer.

In February 2019, The Grotto ceased paying rent to Joseph and Helena [Richie] who, on June 14, 2019, initiated a landlord/tenant action for Breach of Lease Agreement, Ejectment, and Unjust Enrichment. The Barsiks and Elks Holdings filed a separate complaint for Breach of Contract and related tort claims against James, Joseph, and Helena [Richie], respectively, on December 1, 2020. After numerous motions, and settlement conferences before multiple professionals, a three-day non-jury trial was held before the undersigned on December 12, 2022, March 3, 2023 and March 24, 2023. Joseph, Helena, James, and Mr. Michael Laudone testified on behalf of the Richies, while Sean, Linda, and Mr. Joseph DiMarcantonio testified on behalf of the Barsiks. At the

conclusion of the hearings, a briefing schedule was issued and oral argument was held on September 19, 2023.

Trial Court Opinion, 11/18/24, at 1-5 (citations and footnotes omitted). After receiving memoranda from the parties, the court issued an order, and accompanying opinion, on November 18, 2024, at docket number CV-2019-05312, finding against The Grotto "in the amount of $424,000 in unpaid rent, $2,800 in late fees, and $42,000 in reasonable attorneys' fees minus any monies paid into [c]ourt during the pendency of [] this litigation." Order, 11/18/24, at 1-2. The court further ordered The Grotto to vacate the Properties within 60 days. ***See id.*** at 2. Finally, at docket number CV-2020-07743, the court found the Barsiks, Elks Holdings, LLC, and The Grotto, LLC "failed to carry their burden of proving the allegations contained in their Amended Complaint" and therefore found in favor of James, Joseph, and Helena Richie. ***Id.***

On November 29, 2024, Appellants filed a motion for post-trial relief along with a motion to expand the record, arguing certain documents were essential to the court's consideration and review of the issues raised in the post-trial motion. The trial court ultimately denied Appellants' motions to expand the record and for post-trial relief, finding all of the claims lacked merit.

On December 9, 2024, the court entered a final judgment, in accordance with its November 18, 2024 order, except with an amendment to provide that Joseph and Helena Richie are entitled to $48,000 in reasonable attorney's

fees. The court directed the prothonotary to enter the judgment accordingly.

These timely appeals followed.

Appellants raise the following issues on appeal:

1. Did the trial court err in enforcing a backdated, unassigned and un-signed by [A]ppellants, lease agreement drafted solely for financing purposes, lacking mutual assent, imposing an un-negotiated 10-year term, and contrary to clear evidence of fraud, in violation of fundamental contract principles?

2. Did the trial court err by denying rescission of the [BEP] Agreement [], despite its status as the primary controlling and negotiated document governing the transaction, the non-occurrence of its real estate sale condition precedent, the discovery of significant undisclosed liabilities, established fraudulent inducement, and proof of ongoing negotiations that negated any waiver?

3. Did the trial court err in failing to apply the integration doctrine to construe the BEP agreement and the [] Purchase Agreement as components of a single, interdependent transaction?

4. Did the trial court err in awarding $48,000 in attorney fees without a contractual basis, failing to conduct a reasonableness hearing, and in the absence of an established landlord-tenant relationship?

5. Did the trial court err in characterizing evidence of tax delinquencies, intentional insurance cancellations after obtaining insurance declarations as proof of insurance, UCC-1 liens, all of which were required to be disclosed and property improvements as outside the record or otherwise excluding this relevant evidence, thereby prejudicing Appellants' equitable claims and defense of part performance?

**See** Appellants' Brief, at 2-3.

In their first three issues, Appellants challenge the trial court's enforcement of the Lease Agreement in lieu of the BEP Agreement and Purchase Agreement. Alternatively, Appellants argue the court should have

construed all three agreements as valid and enforceable components of a single transaction.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion filed by the Honorable Craig A. Dally, we are confident the trial court did not err in its decisions regarding which agreement(s) were enforceable. The trial court opinion filed on November 18, 2024, carefully discusses, and properly addresses, the court's reasoning for finding the Lease Agreement constitutes a valid, enforceable contract that granted The Grotto a leasehold interest in the Properties in exchange for rental payments; both the BEP Agreement and Property Agreement were rendered null and void when not simultaneously consummated based on the plain language of those agreements;[2] and Appellants failed to prove fraud or tortious interference that would entitle Appellants to damages or recission of any written contract, or enforcement of any alleged oral agreement. **See** Trial Court Opinion, 11/18/24, at 7-16. The court's findings are supported by the record and the court clearly credited Appellees' testimony. Accordingly, we find Appellants' first three issues are without merit based on the well-reasoned opinion of the trial court. **See id.**

_____

[2] We acknowledge the trial court did not specifically address the integration doctrine. However, the trial court found that uncontradicted testimony proved the BEP Agreement and Property Agreement were rendered null and void on July 15, 2017, when the Barsiks / Elks Holdings failed to obtain financing and proceed to closing.

In their fourth issue, Appellants argue the trial court erred in awarding attorney's fees without a legal foundation. "In reviewing a trial court's award of attorneys' fees, our standard is abuse of discretion." *Scalia v. Erie Insurance Exchange*, 878 A.2d 114, 116 (Pa. Super. 2005) (citations omitted).

Importantly, as stated above, the trial court properly found the Lease Agreement constitutes a valid, enforceable contract. The trial court relied on the following evidence to support this conclusion:

> Here, James testified that he entered into the Lease Agreement with Joseph while he was still the sole member of The Grotto. Further, Joseph testified that he agreed to the Lease Agreement as evidenced by his signature. The Lease Agreement specifically grants The Grotto a leasehold interest in the Properties for a term of ten years, beginning in January 1, 2017, in exchange for monthly payment of $4,000 in rent for a total value of $480,000. The Lease Agreement further provides that "[i]n the event the tenant should break this lease without written permission of the landlord, the unpaid rent for the remainder of this lease will become immediately due ...." James went on to testify that the Barsiks were well aware of this agreement and even forwarded the Lease Agreement to a financial institution in support of Elks Holdings' outstanding mortgage application.

Trial Court Opinion, 11/18/24, at 8-9. Based on the above evidence, the court found (1) James, as the sole member and manager of The Grotto at the time of execution, had authority to enter The Grotto into the Lease Agreement with Joseph; and (2) the Barsiks' use of the Lease Agreement in attempting to obtain financing, still agreeing to close on the sale of The Grotto, and subsequently furnishing checks, which they self-identified as rent payments

from September 1, 2017 to February 2019, all tend to show that the Barsiks recognized the validity of the Lease Agreement. ***See id.*** at 9.

As a valid, enforceable contract, the Barsiks are bound by the Lease Agreements terms. The Lease Agreement specifically allows the landlord to recover reasonable legal fees and costs for "any legal actions relating to the payment of rent or the recovery of the property." Exhibit P-4, at ¶ 12(D). Accordingly, Appellants' contention that there is no contractual basis for the award of attorney's fees is without merit.

Appellants argue alternatively that even if a contractual basis for attorneys fees exists, the court failed to hold a reasonableness hearing to determine whether the requested fees were reasonable.

Appellants assert "Pennsylvania law requires that the reasonableness of the requested fees be established through a hearing or the submission of detailed evidentiary support, such as affidavits and itemized billing records." Appellants' Brief, at 46. However, Appellants provide no citation for this assertion. Appellants then insinuate that the court must evaluate numerous factors such as "hours expended, the hourly rate charged, the complexity of the litigation, and the necessity of the services rendered." ***Id.*** (citing to ***McMullen v. Kutz***, 985 A.2d 769, 775 (Pa. 2009)). ***McMullen*** does not stand for any such requirement. ***McMullen*** held that a trial court is permitted to consider the reasonableness of contractually mandated attorneys fees, even if the contract language does not explicitly require reasonableness, and that

the court may reduce those fees where the court finds it appropriate. **See McMullen**, at 776-777. However, the **McMullen** Court specifically did not render any opinion as to the reasonableness of the attorney fees claimed, as that issue was not encompassed in the questions granted for review. **See id.** at 777. As such, no factors relating to a reasonableness inquiry were discussed at all in **McMullen**.

"By now it is hornbook law that the reasonableness of the fee is a matter for the sound discretion of the lower Court and will be changed by an appellate Court only when there is a clear abuse of discretion." **Carmen Enterprises, Inc. v. Murpenter, LLC**, 185 A.3d 380, 390 (Pa. Super. 2018) (citation omitted).

At trial, Appellees' counsel indicated that he secured legal fees in the Lease Agreement and presented his invoices to the court. **See** N.T., 12/6/22, at 128. Appellants' counsel objected to the attorney's fees, specifically indicating the objection was "not that they're unreasonable" but because the legal fees would not be recovered if they were successful on their claim for fraud. **See id.** Testimony was then presented as to Appellees' counsel's legal rate of $175 per hour and that the invoices had been consistently received over the course of the litigation dating back to 2019. **See id.** at 129. The invoices totaled $49,484.54. **See id.** The trial court ultimately awarded $48,000 in "reasonable attorney's fees."

It is clear from the above that the reasonableness of the fees was considered in awarding them to Appellees. Appellants specifically did not challenge the reasonableness at trial and have not shown the trial court abused its discretion in this regard.

Finally, Appellants contend the court erred in characterizing evidence they sought to include in the record after trial as outside the record or in excluding relevant evidence and assert they were prejudiced by such action. This issue is essentially a challenge to the trial court's denial of Appellants' motion to expand the record.

Preliminarily, Appellants requested to expand the record pursuant to Pa.R.C.P. 227.3. Notably, this rule does not provide any avenue to expand the record. Rather, Rule 227.3, titled "Transcript of Testimony" requires all post-trial motions to contain a request for the transcription of the relevant portions of the record, which has already been created. **See** Pa.R.C.P. 227.3.

Further, it is well-established that the purpose of Rule 227.1, pursuant to which Appellants filed their post-trial motion, "is to provide the trial court with an opportunity to review and reconsider its earlier rulings and correct **its own error**." **Claudio v. Dean Machine Co.**, 831 A.2d 140, 145 (Pa. 2003) (citations omitted; emphasis in original).

Here, Appellants are seeking for the trial court to reconsider its decision based on documents that Appellants did not present to the court during trial. Accordingly, the error at trial was attributable to Appellants. Appellants'

argument is not that the trial court misconstrued the evidence adduced at trial, but that other documentation that was not submitted during trial, proves their position. This simply shows us that Appellants failed to provide sufficient evidence to support a decision in their favor at trial, and are attempting to fix their own error post-trial.

> The failure of a party to present sufficient evidence before or during trial to support a decision in that party's favor cannot be cured by a motion filed pursuant to Rule 227.1. To hold otherwise would contravene the efficient administration of justice in this Commonwealth. *See Reilly v. Southeastern Pennsylvania Transportation Authority*, [] 489 A.2d 1291, 1301 ([Pa.] 1985) ("[l]itigants are given their opportunity to present their cause and once that opportunity has passed, we are loathe to reopen the controversy for another airing, save for the greatest of need. This must be so for the security of the bench and the successful administration of justice").

*Id.* at 145.

Accordingly, Appellants have not shown the trial court committed an error based on the information available to it at the time of trial. Additionally, Appellants may not use the post-trial process to correct an error that they made, in not submitting known documents to the court during trial. Therefore, Appellants were not entitled to submit evidence post-trial pursuant to Rule 227.3 or Rule 227.1.

Finally, Appellants concede the excluded evidence—such as tax records, insurance documents, a UCC filing, and documentation of unpaid bills—was obtained during discovery. Despite this fact, Appellants fail to explain why they did not present this evidence to the court during trial. Instead, Appellants

insinuate that this evidence was "properly presented to the court through Appellants' Motion to Expand the Record." Appellants' Brief, at 55. Appellants do not cite to any authority, nor do we know of any such authority, that would allow evidence presented in a filing **after** a judgment has been entered to be considered "part of the record."

Appellants cite to **Commonwealth v. Chmiel**, 889 A.2d 501, 521 (Pa. 2005) for the proposition that "Evidence obtained through discovery and presented to the court, even if not formally admitted during the trial testimony phase, can and should be considered by the court, particularly in a non-jury trial and in the context of post-trial motions and equitable claims." Appellants' Brief, at 55. **Chmiel** simply does not state or support any such proposition. Again, we can find no support for any such assertion in our case law. As Appellants have not provided us with any actual support for their final claim, we find it is without merit.

As we find none of Appellants' issues merit relief, we affirm the order appealed from.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2025

- 14 -