J-A26026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CAROLYN T. CAMPER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRADLEY S. WERNER | : | |
| | : | |
| Appellant | : | No. 3 EDA 2022 |

Appeal from the Decree Entered November 17, 2021
In the Court of Common Pleas of Bucks County
Civil Division at No(s): A06-13-60988-D-37

BEFORE: BOWES, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED MARCH 3, 2023**

Appellant, Bradley S. Werner ("Husband"), appeals from the decree entered in the Bucks County Court of Common Pleas, which finalized the divorce between Husband and Appellee, Carolyn T. Camper ("Wife"). In a separate order, the court completed the equitable distribution of the marital property. We affirm.

This Court previously set forth the relevant facts and procedural history as follows:

> Husband and Wife were married in 2005 and separated in 2013. This was the second marriage for Wife, age 56. Wife has two adult children from her prior marriage. Husband is 58 years old and has had four previous marriages. Prior to his marriage to Wife, Husband formed Werner Athletic Management, LLC (WAM) and Pennsbury Racquet and Athletic Club, LLC (PRAC) in anticipation of purchasing a

_____

[*] Retired Senior Judge assigned to the Superior Court.

pre-existing tennis club, Pennsbury Racquet Club (tennis club). Husband, through PRAC, purchased the tennis club approximately 16 months prior to marrying Wife.[1]

[1] While still married to her first husband, Wife contributed $110,000 towards the acquisition of PRAC and WAM. In exchange, Wife acquired a 3.57% ownership stake in PRAC. Later, Husband gifted Wife a 1% ownership share in WAM.

Wife filed a complaint in divorce on June 19, 2013,[2] seeking equitable distribution of the parties' marital assets, alimony, alimony *pendente lite* (APL), counsel fees, costs, and expenses. On August 1, 2014, an interim order of court (interim support order) was entered directing Husband to pay Wife $5,000 per month in APL.[3] In addition to directing Husband to pay Wife APL, the interim support order also set forth Husband's and Wife's individual obligations with respect to three jointly-owned properties.[4]

[2] The parties stipulated that, for equitable distribution purposes, June 19, 2013, was also the date of separation.

[3] The interim support order was later terminated.

[4] By way of further background, Husband and Wife jointly owned and resided together in the marital residence (Yardley Road property) during their marriage. Additionally, the parties jointly owned a rental property (Blough Court property) and a vacation home (Beach Avenue property). Following the parties' separation, Wife remained in the Yardley Road property and paid all real estate carrying costs prior to its sale. Husband resided in the Blough Court property with his mother and sister from the date of separation through November 2014, when Husband decided to reside elsewhere. His mother and sister remained in the home until it sold in 2018. In addition to paying the carrying costs for that property, Husband was also directed to pay all costs for the Beach Avenue property. With respect to this property, the interim support order preserved Husband's "right to claim any credits he may have at the time of

equitable distribution." Following the sale of all three properties, the proceeds were held in escrow pending equitable distribution.

On March 22, 2017, a master's hearing was held before Roger E. Cullen, Esquire (the Master), to address the issues of equitable distribution, alimony, and counsel fees. At the conclusion of the hearing, the Master entered a master's report recommending, *inter alia*, that the marital estate be distributed 60% to Wife and 40% to Husband.[5] Pertinent to this appeal, the Master made recommendations regarding the proposed distribution of several assets, including: (1) the increase in value of PRAC and WAM during the parties' marriage; (2) Wife's irrevocable trust, gifted to her by her mother during the parties' marriage (the Trust);[6] (3) a Merrill Lynch investment account titled in the names of both Husband and Wife as joint tenants with a right of survivorship (Merrill Lynch account); and (4) the proceeds from the sale of the parties' three properties.

[5] The Master also recommended that Wife's claims for alimony and counsel fees be denied.

[6] Wife's mother established the Trust for Wife on December 21, 2012 by depositing $10.00 into the Trust. That same day, Wife's mother made a second deposit, this time in the amount of $700,000. According to Wife's inventory, as of the date of separation, the value of the Trust was [estimated to be] $800,000.

Husband timely filed a motion for a hearing *de novo*, asserting that he took "exceptions to the recommendation of" the Master. Thereafter, the trial court presided over an equitable distribution hearing, which spanned three days. Upon the conclusion of testimony and the submission of proposed findings of fact and conclusions of law by the parties, the trial court issued an order, in which it concluded that "an equal split of the marital estate is appropriate." In relevant part, the trial court determined that the increase in value of PRAC and WAM during the marital coverture, which constituted marital property, was $2,300,000. Additionally, the court found that "Husband's personal use of and/or mismanagement of PRAC/WAM [p]rofits/[a]ssets" post-

separation totaled $400,000, which the court determined was subject to equitable distribution. Neither the increase in value of the Trust nor the Merrill Lynch account was listed as a marital asset to be distributed. Additionally, neither party received any credits for the carrying costs the parties were directed to pay on their three jointly-owned properties.

*Camper v. Werner*, No. 2726 EDA 2018, unpublished memorandum at 1-4 (Pa.Super. filed December 3, 2019) (internal citations omitted) ("*Camper I*").

Husband subsequently filed a notice of appeal from the equitable distribution order. On December 3, 2019, this Court vacated the order and remanded for further proceedings. Among other things, this Court determined that the trial court failed to provide "any analysis of how the court arrived at a $2,300,000 valuation for PRAC and WAM." *Id.* at 10. This Court provided the following remand instruction:

> For the foregoing reasons, we reverse the portion of the trial court's order valuing the marital portion of PRAC and WAM at $2,300,000. Upon remand, we direct the trial court to address the … tax and cost of sale consequences [as set forth in 23 Pa.C.S.A. § 3502(a)(10.1)-(10.2)] and, if necessary, set forth a new valuation based on the same. Regardless of whether the trial court accepts the valuation offered by either expert, or again formulates its own valuation, the trial court shall set forth reasons on the record to support the chosen valuation.

*Id.*

We also addressed the increase in value of Wife's trust. "[W]hile the entirety of the Trust is not marital property, the trial court should have recognized that the increase in value of the Trust during the marital coverture constituted marital property." *Id.* at 17. Because the trial court did not

- 4 -

address the increase in value of the Trust, we remanded for a determination on this point. Finally, this Court determined that Husband's post-separation actions with respect to PRAC and WAM funds should not have impacted the marital portion of these assets, and we vacated the portion of the equitable distribution order that awarded $200,000 to Wife. *See id.* at 10-15.

In response to the remand instructions, the trial court entered a new equitable distribution order on February 23, 2021. On November 17, 2021, the court entered a final divorce decree. Husband timely filed a notice of appeal challenging the new equitable distribution order on December 17, 2021.[1] That same day, the court ordered Husband to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Husband timely filed his Rule 1925(b) statement on December 28, 2021.

Husband now raises three issues for our review:

> Whether the [trial] court erred on remand by failing to properly consider the dispositional costs of [PRAC and WAM] under 23 Pa.C.S. § 3502(a)(10.1) & (10.2) in its determination of their value.
>
> Whether the [trial] court erred on remand by modifying its prior 50/50 equal division of the marital estate to a 60/40 division in favor of Wife without adequate lawful basis.
>
> Whether the [trial] court erred on remand by disregarding Wife's judicial admission regarding the value of the marital component of the … Trust established at trial.

_____

[1] Issues in divorce are reviewable after entry of the divorce decree and the resolution of all economic issues. *See Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985).

(Husband's Brief at 10).

The following principles apply to this Court's review of an equitable distribution order:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. [W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.
>
> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this [c]ourt will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

**Goodwin v. Goodwin**, 244 A.3d 453, 458 (Pa.Super. 2020), *aff'd*, ___ Pa. ___, 280 A.3d 937 (2022) (internal citations and quotation marks omitted).

In his first issue, Husband contends that this Court provided explicit remand instructions in **Camper I**. Husband emphasizes this Court's directive

that the trial court needed to address the tax ramifications and sale expenses impacting the valuation of the marital portion of PRAC and WAM. Husband insists that the trial court "ignored the remand directions and attributed the same $2,300,000 value" to the marital portion of the assets. (Husband's Brief at 19). "By simply reiterating its prior determination, the [trial] court … wholly disregarded competent … evidence offered by Husband's expert witness … setting forth and explaining the tax repercussions" and other costs that would arise out of the sale of PRAC and WAM. (*Id.*) Husband maintains that the trial court's "stated intention to effectuate a 60/40 split of the equitable value of PRAC and WAM between [the parties] can only be achieved through division **after** the costs of liquidating the asset are determined and considered." (*Id.* at 27) (emphasis in original). Husband concludes that the trial court committed an error of law by not adequately considering the tax/liquidation expenses, and this Court must reverse the new equitable distribution order. We disagree.

Regarding remand directives from this Court:

> [A] trial court has an obligation to comply scrupulously, meticulously, and completely with an order of [the appellate court] remanding a case to the trial court. The trial court is required to strictly comply with the mandate of the appellate court. Issues not included in the mandate cannot be considered by the trial court.

*Carmen Enterprises, Inc. v. Murpenter, LLC*, 185 A.3d 380, 389 (Pa.Super. 2018), *appeal denied*, 650 Pa. 671, 201 A.3d 725 (2019) (internal citations, quotation marks, and emphasis omitted).

Further, the Domestic Relations Code governs the equitable distribution of marital property as follows:

### § 3502.  Equitable division of marital property

**(a)    General rule.**—Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors.  The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets.  Factors which are relevant to the equitable division of marital property include the following:

(1)        The length of the marriage.

(2)        Any prior marriage of either party.

(3)        The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4)        The contribution by one party to the education, training or increased earning power of the other party.

(5)        The opportunity of each party for future acquisitions of capital assets and income.

(6)        The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7)        The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8)        The value of the property set apart to each party.

(9)    The standard of living of the parties established during the marriage.

(10)    The economic circumstances of each party at the time the division of property is to become effective.

(10.1)    The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2)    The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11)    Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a).

Instantly, **Camper I** provided a lengthy analysis of the trial court's original valuation of the marital portion of PRAC and WAM. We concluded that "the trial court did not provide any analysis of how it arrived at the $2,300,000 valuation." **Camper I, supra** at 8. "Furthermore, the trial court made no mention about whether it considered the statutory factors in [S]ection 3502." **Id.** at 10. Accordingly, this Court vacated the original equitable distribution order, remanded the case, and instructed the trial court to: 1) address the tax and cost of sale consequences as contemplated by Section 3502(a)(10.1), (10.2); and, if necessary, 2) set forth a new valuation based on these factors. **See id.** at 10. We also ordered the court to provide on-the-record reasons in support of the chosen valuation for the marital portion of PRAC and WAM.

On February 23, 2021, the trial court entered the new equitable distribution order. The eight-page order analyzed each factor set forth in Section 3502(a). (*See* Order, entered 2/23/21, at 5-6). Regarding the valuation of the marital portion of PRAC and WAM:

> This court determines the marital value of PRAC and WA[M] to be $2,300,000. This is in line with Wife's expert's testimony which valued the increase of these business interests at $2,300,000. This court found Wife's expert's testimony credible, and Husband's expert's testimony not credible. While Wife argued that the value of the PRAC and WA[M] should be increased by an additional $110,000 to $2,410,000, this court does not adopt this addition to value as the overall increase in value accounts for Wife's premarital contribution to this business.
>
> This court has considered both the possible tax consequences of a sale as well as all other possible liquidation cost[s]. However, the court does not find it appropriate to deduct for those possible costs. Said deductions are not mandatory, and a further reduction of the value of this marital asset would not serve to effectuate economic justice in this matter. Most importantly the court finds that a sale of the business is extremely unlikely. The business is very profitable. It provides Husband with a substantial direct income. In addition, as we previously found, the business supports Husband's expenditure of substantial sums for his personal expenses. As noted below, the court determines that Wife shall receive 60% of the marital assets. Wife's 60% of this asset is $1,380,000. If the court did deduct the theoretically possible dispositional costs (taxes, liquidation costs, etc.), the court would award Wife substantially more than 60% of the asset, as the court finds that awarding Wife $1,380,000 of this asset is equitable.

(*Id.* at 1-2) (some capitalization omitted).

The text of the new order confirms that the trial court complied with the remand instructions set forth in *Camper I*. The court considered Husband's

expert's testimony regarding the possible tax consequences and costs associated with a sale of PRAC and WAM. Nevertheless, the court did not find such evidence credible, which was within its province. ***See Goodwin, supra***. The court also found that the likelihood of Husband retaining these assets outweighed the need to reduce their valuation based upon the possibility of a sale. Thus, the court complied with the ***Camper I*** directive requiring an on-the-record statement of reasons for the chosen valuation.

Husband now argues that the trial court erred by failing to reduce the valuation of the marital portion of PRAC and WAM to reflect the potential tax consequences and costs associated with liquidation of the assets. On this point, we find the precise language of ***Camper I*** to be instructive. Although this Court acknowledged that the tax ramifications and expenses associated with the sale of a marital asset are relevant considerations regardless of the likelihood of a sale, we did not mandate that the trial court automatically deduct such costs from the chosen valuation upon remand. ***See Camper I, supra*** at 9-10 (citing ***Carney v. Carney***, 167 A.3d 127, 134 (Pa.Super. 2017)). Rather, this Court instructed the trial court to "address" the "tax and cost of sale consequences, and **if necessary**, set forth a new valuation based on the same." ***Id.*** at 10 (emphasis added). On this record, we conclude that the trial court satisfied its obligation to comply with this Court's remand instructions, and it did not abuse its discretion in failing to calculate a new valuation. ***See Goodwin, supra***; ***Carmen Enterprise, Inc., supra***.

- 11 -

Consequently, Husband is not entitled to relief on his first claim.

In his second issue, Husband asserts that the trial court originally ordered a 50/50 split of the marital assets. Upon remand, however, the new equitable distribution order changed the distribution percentage to 60/40 in favor of Wife. Husband argues that the court altered the distribution percentages "based upon a wholly unchanged factual record[.]" (Husband's Brief at 27). Husband acknowledges that "there is no standard formula guiding the division of marital property and the method of distribution derives from the facts of the individual case." (*Id.* at 29) (internal quotation marks and citation omitted). Husband insists, however, that the court's modification of the distribution percentages upon remand was guided by "a desire to vindicate its prior monetary award to Wife." (*Id.* at 31). Husband concludes that the "modification from a 50/50 equal apportionment to a 60/40 share in favor of Wife was erroneous and should be reversed." (*Id.* at 37). We disagree.

"In the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may require." *Schenk v. Schenk*, 880 A.2d 633, 639 (Pa.Super. 2005). "The trial court need not distribute assets equally among the parties, as economic justice often requires otherwise." *Dalrymple v. Kilishek*, 920 A.2d 1275, 1280 (Pa.Super. 2007). "Relevant factors in fashioning an equitable distribution or reimbursement award are set forth at

- 12 -

23 Pa.C.S.A. § 3502(a)." *Id.*

Instantly, *Camper I* acknowledged that its holdings might disturb the original equitable distribution scheme such that some alterations were needed to effectuate economic justice. *See Camper I, supra* at 25-26. For example, *Camper I* held that the trial court committed reversible error in considering Husband's post-separation mismanagement of $400,000 in PRAC and WAM funds. *See id.* at 10-15. Consequently, the new equitable distribution order provided as follows:

> On remand, the marital estate is valued at less. Also, some of Wife's assets previously attributed as her non-marital estate are now part of the marital estate, thereby decreasing Wife's non-marital estate.[2] Also, Husband's non-marital estate has now increased by the aforesaid $400,000. As a result, this [c]ourt determines that an equal distribution of the marital estate would not effectuate economic justice between the parties. Instead, the marital estate (subject to the above determinations) shall be divided 60% to Wife and 40% to Husband based on the following analysis of the equitable distribution factors outlined at 23 Pa.C.S.A. Section 3502[.]

(Order, entered 2/23/21, at 4-5). Thereafter, the court provided its analysis of each of the Section 3502(a) factors.

Contrary to Husband's argument, the trial court did not modify the distribution percentages in some attempt to "vindicate" any prior

---

[2] Regarding the decrease in Wife's non-marital estate, we reiterate the following findings in *Camper I*: 1) the trial court did not address the increase in value of the Trust, which should have been considered a marital asset; and 2) the trial court erred in determining that Wife's Merrill Lynch account could not be considered a marital asset. *See Camper I, supra* at 17, 21.

determinations. Rather, the holdings from *Camper I* forced the trial court to rethink the allocation of assets in order to effectuate economic justice. In this matter, which involves extensive litigation over a complex marital estate, we decline Husband's invitation to reweigh the Section 3502(a) factors and interfere with the trial court's thoughtful distribution scheme. *See Dalrymple, supra*. The new equitable distribution order provides the court's reasoning for implementing the 60/40 split. We cannot say that the court committed an abuse of discretion, especially where the 60/40 split comports with the Master's original recommendation. *See Goodwin, supra*. Therefore, Husband is not entitled to relief on his second claim.

In his third issue, Husband reiterates that Wife's mother created the Trust for Wife's benefit during the marriage, and the initial value of the Trust was $700,000. Citing Wife's 2016 statement of inventory, Husband insists that the value of the Trust was $800,000 on the date of separation. Further, Husband argues that the valuation listed in Wife's statement "constitutes a judicial admission, [and Wife] is bound by the same, and cannot simply choose to ignore it in an effort to make a better argument." (Husband's Brief at 39). Under these circumstances, Husband concludes that the trial court committed reversible error in finding that the value of the Trust had increased by only $9,356.76 on the date of separation. We disagree.

This Court has addressed judicial admissions as follows:

> Statements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are

termed judicial admissions and are binding on the party. ***Nasim v. Shamrock Welding Supply Co.***, [563 A.2d 1266, 1267 (Pa.Super. 1989)] ("It is well established that a judicial admission is an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of trial, the truth of the admission."). As we held in ***John B. Conomos, Inc. v. Sun Co.***, 831 A.2d 696, 712 (Pa.Super. 2003)[, *appeal denied*, 577 Pa. 697, 845 A.2d 818 (2004)],

> For an averment to qualify as a judicial admission, however, it must be a clear and unequivocal admission of fact. Judicial admissions are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories and conclusions of law. The fact must have been unequivocally admitted and not be merely one interpretation of the statement that is purported to be a judicial admission. ***Jones v. Constantino***, [631 A.2d 1289, 1293–94 (Pa.Super.1993)] (finding no admission where "the evidence could be reasonably construed to admit of more than one meaning")…. An admission is not conclusively binding when the statement is indeterminate, inconsistent, or ambiguous. When there is uncertainty surrounding a conceded fact, it is the role of the judge or jury as fact finder to determine which facts have been adequately proved and which must be rejected.

***Coleman v. Wyeth Pharmaceuticals, Inc.***, 6 A.3d 502, 524-25 (Pa.Super. 2010), *appeal denied*, 611 Pa. 638, 24 A.3d 361 (2011) (some internal citations omitted).

Instantly, Wife filed her statement of inventory on May 4, 2016. The "non-marital property" section of the statement included the Trust. (***See*** Statement, filed 5/4/16, at 5 (unnumbered)). The same page of the statement provided a space for Wife to supply the "**Estimated** Value at DOS" of the Trust. (***Id.***) (emphasis added). Here, Wife estimated that the value of

the Trust was $800,000 on the date of separation. Because this amount was nothing more than an estimate, we cannot say it amounted to a "conclusively binding" judicial admission. *See Coleman, supra*.

After remand, the parties filed a joint submission "outlining issues that are agreed upon and issues still in dispute" following this Court's remand. (Joint Submission, filed 10/13/20, at 1). Significantly, the joint submission addressed the value of Wife's trust as follows:

> The parties agree that the date of separation value of Wife's Trust was $709,356.76. We agreed that that statement was not submitted in Court at the time of trial. Rather, a statement was submitted long after the date of separation indicating an increase in value of approximately $100,000.

(*Id.* at 2). Thereafter, the court relied upon the information in the joint submission to address the marital portion of the Trust in the new equitable distribution order. (*See* Order, entered 2/23/21, at 3; Trial Court Opinion at 7-8).

Here, the court properly determined that the clear, unequivocal statement in the joint submission constituted a judicial admission regarding the value of the Trust on the date of separation. *See Coleman, supra*. Therefore, the court did not abuse its discretion by assigning this asset a date of separation value of $709,356.76. *See Goodwin, supra*. Accordingly, Husband is not entitled to relief on his final claim, and we affirm the divorce decree and corresponding equitable distribution order.

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2023