J-A25037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| STEVE FREMPONG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEALONDA ROBERTS | : | No. 527 EDA 2025 |

Appeal from the Judgment Entered February 24, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 2100701316

BEFORE: LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED DECEMBER 30, 2025**

Plaintiff Steve Frempong appeals, *pro se*, from the order that granted him quiet title for the property located at 5936 Chew Avenue in Philadelphia (the Property), and that found in defendant Kealonda Roberts's favor on her counterclaim, against Frempong, in the amount of $8,882.42. Frempong challenges the court's grant of Roberts's counterclaim for her expenses incurred in connection with the Property. We affirm.

This lawsuit was initiated by Frempong acting *pro se*, on July 16, 2021, by filing a complaint in the trial court. Frempong alleged that Roberts fraudulently transferred the Property that belonged to him to herself. Roberts, also acting *pro se*, filed an answer to the complaint on February 10, 2022. The court scheduled a non-jury trial, which was held on May 15, 2023. At

_____

[*] Retired Senior Judge assigned to the Superior Court.

trial, Frempong testified regarding his purchase of the Property in the 1980s, whereas Roberts testified that she acquired the Property in 2020 from a third party (the Third Party) who represented herself as Frempong's representative. Roberts further testified that she incurred various costs in connection with Property.

After holding its decision under advisement, on May 31, 2023, the court issued an order simultaneously granting Frempong's quiet title claim and Roberts's counterclaim. That same day, the prothonotary provided notice to the parties pursuant to Pennsylvania Rule of Civil Procedure 236. Frempong filed a timely post-trial motion on June 12, 2023. *See* Pennsylvania Rule of Civil Procedure 227.1(c)(2), which the court denied. On February 24, 2025, Frempong filed both a praecipe to enter judgment and a notice of appeal. Thereafter, Frempong and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Frempong raises the following issues for our review:

1. Whether the trial court opinion is neither supported by the facts nor the law, the judgment entered is manifestly unreasonable[,] or the result [that the court reached] is due to [] partiality, bias[,] or ill will and should be reversed?

2. Whether [Roberts] is not entitled to any relief for her counterclaim of unjust enrichment as she knew or should have known that the deed dated September 30, 2017[,] was fraudulent, yet proceeded to record it, and den[ied] [Frempong's] rightful owner[ship of,] access [to], possession [of], and protection[ of the Property,] from September 2021[,] in violation of [the] Constitutional protections[, which] show bad faith, malice[,] and wrongful conduct[?]

- 2 -

3. Whether the trial court's findings of fact are grossly erroneous and constitute gross and manifest abuse[s] of discretion[?]

4. Whether [the] Superior Court has jurisdiction to review the issues raised in this [case?]

Appellant's Brief, at 2.

Prior to reaching the merits of his appeal, we begin with Frempong's final issue first, as we must determine whether we have jurisdiction to entertain his appeal. *See Carmen Enters. v. Murpenter, LLC*, 185 A.3d 380, 388 (Pa. Super. 2018) ("because the question of appealability implicates the jurisdiction of this Court, a non-waivable matter, we are not only permitted[,] but required[,] to determine the appealability of the order that we have been asked to review.") (citation, quotation marks, and brackets omitted). Instantly, the trial court suggests that the May 31, 2023 order was a final order disposing of all claims as to all parties, and thus, Frempong's appeal taken beyond thirty days therefrom, on February 24, 2025, is untimely. We disagree and find Frempong's appeal is timely.

Initially, we note that "[j]urisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary." *Calabretta v. Guidi Homes, Inc.*, 241 A.3d 436, 440 (Pa. Super. 2020) (citation and quotation marks omitted).

Procedurally, there are four recognized methods of appeal in Pennsylvania: "(1) a final order or an order certified as a final order ([*see*] Pa.R.A.P. 341); (2) an interlocutory order as of right ([*see*] Pa.R.A.P. 311); (3) an interlocutory order by permission ([*see*] Pa.R.A.P. 312, 1311[; *see*

- 3 -

*also*] 42 Pa.C.S.[] § 702(b)); or (4) a collateral order ([*see*] Pa.R.A.P. 313)."
***Cavallo Mineral Partners, LLC v. EQT Prod. Co.***, 298 A.3d 413, 419 (Pa.
Super. 2023). Appeals from final orders, applicable here, must be taken
within thirty days of the entry of a final order. ***See Grimm v. Grimm***, 149
A.3d 77, 86 (Pa. Super. 2016) ("[T]o preserve the right to appeal a final order
of the trial court, a notice of appeal must be filed within 30 days after the date
of entry of that order.") (citation, quotation marks, and brackets omitted);
***see also*** Pa.R.A.P. 341; Pa.R.A.P. 903(a).

Further, we have recognized that "an appeal to this Court can only lie
from judgments entered after the trial court's disposition of any post-verdict
motions[.]" ***Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d
511, 514 (Pa. Super. 1995) (*en banc*); ***see also Fanning v. Davne***, 795 A.2d
388, 392 (Pa. Super. 2002) (noting that requirement that appeal properly lies
from entry of judgment on docket is jurisdictional); Pa.R.A.P. 108(b) (date of
entry of order in case subject to Rules of Civil Procedure is day on which clerk
makes notation in docket that notice of entry of order was given under
Pa.R.Civ.P. 236(b)). Also, in this quiet title action, to preserve any issues for
appeal, the appellant must file a timely post-trial motion following the court's
order announcing the verdict. ***See Kennel v. Thomas***, 804 A.2d 667, 668
(Pa. Super. 2002) (*per curiam*) (holding quiet title actions are governed by
Pennsylvania Rules of Civil Procedure, and requiring filing post-trial motion
within ten days of the court's non-jury decision to preserve claims for appellate
review); ***see also*** Pa.R.Civ.P. 227.1(c)(2) ("Post-trial motions shall be filed

within ten days after [. . .] notice of [. . .] the filing of the decision in the case of a trial without jury.").

As to the trial court's suggestion of the untimeliness of Frempong's appeal, we recognize that our Supreme Court has stated that "where the entry of judgment is not required, the appeal period begins on the date of the order from which the appeal lies" and the subsequent judgment is a nullity. **See Miller Elec. Co. v. DeWeese**, 907 A.2d 1051, 1056-57 (Pa. 2006). Nevertheless, this Court has specifically found that an appeal from a quiet title action requires the timely filing of post-trial motions to preserve claims for appellate review. **See Kennel**, 804 A.2d at 668-69. Moreover, "an appeal properly lies from the entry of judgment, not from the denial of post-trial motions." **Croyle v. Dellape**, 832 A.2d 466, 470 (Pa. Super. 2003) (citation omitted). Thus, it follows that an immediate appeal directly from the court's May 31, 2023, order would have been quashed where the entry of judgment after disposition of the post-trial motions was necessary to invoke our appellate jurisdiction. **See id.** at 669; **see also Melani v. Northwest Eng'g, Inc.**, 909 A.2d 404, 405 (Pa. Super. 2006) ("Once a post-trial motion is timely filed, judgment cannot be entered until the trial court enters an order disposing of the motion or the motion is denied by operation of law one hundred and twenty days after the filing of the motion."); **see also** Pa.R.Civ.P. 227.4.

Here, Frempong timely filed a post-trial motion within ten days of entry of the May 31, 2023 order announcing the court's decision.[1]  Thereafter, Frempong filed his allegedly untimely notice of appeal on February 24, 2025, the same day that he filed a praecipe to enter judgment, which judgment was entered with Rule 236(b) notice.  Contrary to the trial court's suggestion, we conclude that Frempong's appeal is timely because he filed his notice of appeal on the same day judgment was entered on the docket, which followed the court's disposition of Frempong's timely post-trial motion, which occurred close to one-and-a-half years prior.  **See Johnston the Florist, Inc.**, 657 A.2d at 514; **Fanning**, 795 A.2d at 392; **Kennel**, 804 A.2d at 668-69; **see also** Pa.R.A.P. 108(b).  Therefore, we have jurisdiction to review the merits of Frempong's claims.[2]  **See Carmen Enters.**, 185 A.3d at 388; **see also Calabretta**, 241 A.3d at 440.

We consider Frempong's remaining issues on appeal together.  In essence, Frempong argues that there was no support in the record for the court's May 31, 2023 order awarding Roberts's claim for damages totaling

---

[1] As the tenth day for filing a post-trial motion fell on a Saturday, Frempong had until Monday, June 12, 2023, to file timely post-trial motions.  **See** 1 Pa.C.S. § 1908 (stating that, time periods are computed by excluding first day and including last day of such period, and where last day falls on Saturday, Sunday, or legal holiday, that day is omitted from calculation).

[2] Although Frempong's notice of appeal purports to appeal from "the order entered May 15, 2023," Notice of Appeal, 2/24/25, at 1, we conclude, as stated in greater detail in this decision, that this appeal properly lies from the judgment entered in the docket on February 24, 2025.  We have amended the caption accordingly.

$8,882.42. More specifically, Frempong contends that Roberts failed to establish what improvements she made to the Property and only admitted that she left supplies inside the Property. Frempong claims that Roberts's testimony was inconsistent and internally conflicting, and insofar as the trial court determined that Roberts was the more credible party,[3] that determination demonstrated the trial court's bias.

Frempong alleges that, contrary to the trial court's finding, Roberts created the fraudulent deed rather than the Third Party. Frempong complains that there is no record of the Third Party's involvement, and in any event, the

_____

[3] To establish that Roberts was not credible, committed fraud, or should have discovered the Third Party's fraud with the exercise of reasonable care, Frempong specifically points to documents filed by Roberts with the City of Philadelphia or the trial court, including: (1) the deed transferring the Property to herself; (2) the transfer tax certification for the Property that Roberts filed; and (3) Roberts's answer to Frempong's complaint. As to the deed, Frempong argues it was notarized on September 30, 2017, by an unidentifiable notary, but Roberts did not file the deed with the City of Philadelphia until February 27, 2020. The deed notarization date, Frempong alleges, conflicts with Roberts's testimony that she became aware of the Property in 2020, and conflicts with Frempong's testimony that he was alerted to a potentially fraudulent transfer of the Property by City of Philadelphia officials in 2019. Frempong also relies on Roberts's transfer tax certification for the Property, in which she certified that, to the best of her knowledge, all information submitted was true, correct, and complete, even though Roberts knew or could easily verify—in Frempong's view—that the deed was fraudulent. Frempong additionally notes an inconsistency wherein Roberts stated in her answer to his complaint that she purchased the Property for $6,000.00, whereas, in Roberts's transfer tax certification for the Property, Roberts stated that the cash consideration for the Property was $5,000.00, allegedly further evidencing her intent to defraud Frempong. Frempong finally points to the timing of when Roberts filed the deed, which occurred at the beginning of the COVID-19 pandemic, as further evidence of her alleged intent to defraud him.

Third Party pleaded guilty to federal tax fraud charges in 2019. Therefore, Frempong concludes, the Third Party could not have participated in the fraudulent transfer of the Property due to her being incarcerated. Frempong contends that Roberts wrongly blames the Third Party for her own fraudulent actions and that Roberts knew she could falsely do so because Roberts lives within a five-minute walk of the Third Party's residence and because the Third Party's arrest was widely publicized. Also, Frempong asserts that Roberts's conversant knowledge of the court system proves Roberts perpetrated the fraud. Frempong states that Roberts's fraud thereby renders inapplicable the equitable relief the trial court granted to her under the doctrine of unclean hands. Finally, Frempong argues that because Roberts was aware of the Third Party's alleged fraud activities, Roberts knew or should have known that Roberts could not be the rightful owner of the Property, and she failed to exercise reasonable care to prevent her economic losses.

Our standard of review from a non-jury trial verdict is well-settled:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is

the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

Moreover, the trial court, as the finder of fact, is free to believe all, part[,] or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact[-]finder.

*Davis v. Borough of Montrose*, 194 A.3d 597, 605 (Pa. Super. 2018) (quoting *Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.*, 181 A.3d 1188, 1191-92 (Pa. Super. 2018)) (brackets and ellipsis omitted).

Also, in reviewing a judgment entered in a quiet title action, appellate courts are limited to determining "whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion." *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005) (citation and quotation marks omitted). Appellate courts "will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence." *Birdsboro Mun. Authority v. Reading Co. and Wilmington & Northern R.R.*, 758 A.2d 222, 225 (Pa. Super. 2000) (citations and quotation marks omitted).

In connection with Frempong's allegations that Roberts committed fraud, this Court has previously explained that whether evidence establishes fraud or forgery is a question of witness credibility to be determined by a fact-finder. *See De Lage Landen Fin. Servs., Inc. v. Urban Partnership, LLC*, 903 A.2d 586, 590 (Pa. Super. 2006) ("because forgery presents an issue of

fact, the resolution of the issue necessarily turns on the court's assessment of the witnesses' credibility") (citation omitted); *see also Greenwood v. Kadoich*, 357 A.2d 604, 606 (Pa. Super. 1976) ("Whether fraud has been committed is a question of fact[.]").

Instantly, the trial court made the following factual determinations:

1. The purported transfer of title to the [P]roperty [] to [] Roberts was the result of a fraudulent transaction perpetuated by [the Third Party].

2. It is specifically found that [] Roberts[] did not perpetuate any fraud against [] Frempong.

3. [] Roberts made payment of taxes for the [P]roperty in the amount of $7,486.42[,] which are to [Frempong's] benefit[].

4. [] Roberts suffered financial loss in the amount of $896.00 for items removed from the [P]roperty by [Frempong].

5. [] Roberts suffered financial loss in the amount of $500[.00] for a clean out of the [P]roperty necessitated by [] Frempong's actions.

Order, 5/31/23. *See also* Trial Court Opinion, 4/14/25, at 4-5. In making these factual findings, the trial court deemed Roberts's trial testimony more credible than Frempong's. *See id.* at 6, 7. Specifically, the trial court found that Roberts was entitled to compensation for her expenses on the Property including "the taxes she paid, the costs for cleaning up the [P]roperty, and the expenses incurred in an attempt to repair the [P]roperty, which was in ill repair due to [Frempong's] actions[.]" *Id.*; *see id.* at 6 ("[Roberts] testified that she made partial payments on the overdue [2019 and 2020] taxes[, . . .] amounting to $7,486.42[, . . .] hired a roofer and purchased roofing

materials to renovate the dining room, which had a hole in the ceiling[, . . .] and paid $500.00 to the individual who performed the cleanup.").

After our review, we find that the trial court's factual findings are supported by the record and we discern no error of law or abuse of discretion.

First, contrary to Frempong's claims, Roberts's testimony provided the record basis to establish Roberts's expenses in connection with the Property. *See* N.T. Motion *in Limine*/Non-Jury Trial, 5/15/23, at 75 (Roberts paid $7,486.42 in taxes on Property); *see id.* at 67 (Roberts paid $900.00 down payment to roofer for work on Property); *see id.* at 14, 85 (Roberts paid $496.00 for supplies Frempong took possession of in Property); *see id.* at 91-92 (Roberts paid $500.00 for Property cleanup). Indeed, Roberts's testimony was sufficient to establish the value of the payments, goods, and services about which she testified. *See Pikunse v. Kopchinski*, 631 A.2d 1049, 1052 (Pa. Super. 1993) (trial court's award of damages not improper and adequately supported where court considered evidence presented by both parties and found appellee's evidence more credible; estimates by appellee of items' worth based on price she paid afforded trial court reasonable basis upon which to calculate appellee's loss and trial court free to accept appellee's proffer of value of her personal possessions); *see also Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1257-58 (Pa. Super. 1983) (noting no requirement exists for mathematical precision from evidence in finding damages, only sufficient facts required for court to intelligently estimate loss without conjecture; where damages are fairly estimated from

evidence, recovery will be sustained even though such amount cannot be determined with entire accuracy).[4]

Second, as it relates to Frempong's claim that Roberts's testimony was inconsistent and internally conflicting, insofar as the trial court determined that Roberts was the more credible party, we discern no abuse of discretion. *Davis*, 194 A.3d at 605 (trial court, as factfinder, is free to believe all, part, or none of evidence presented); *see also Morin v. Brassington*, 871 A.2d 844, 852 (Pa. Super. 2005) ("[A]n appellate court, will not invade the credibility-determining powers of the fact-finder merely because the evidence was conflicting and the fact-finder could have decided the case either way.").

Third, to the extent Frempong complains that there was no evidence of the Third Party's involvement or fraud in this case, we disagree. We find Roberts's testimony provided sufficient basis for establishing that she was the victim of a fraudulent scheme wherein the Third Party claimed to have a right to purchase the Property via tax sale but claimed to have insufficient funds. *See* N.T. Motion *in Limine*/Non-Jury Trial, 5/15/23, at 12; *see id.* at 71 (Roberts testifying that Property sale was orchestrated by Third Party holding

_____

[4] We observe that the trial court calculated the loss of Roberts's supplies as $896.00, whereas, Roberts's trial testimony was that the supplies were worth $496.00. *See* N.T. Motion *in Limine*/Non-Jury Trial, 5/15/23, at 85. Nevertheless, Roberts also testified that her monetary damages in connection with the Property—resulting from Frempong's actions—included her loss of a payment to the roofer that she hired to work on the Property for an additional $900.00. *See id.* at 67. Thus, there was ample support in the record for the trial court's calculation of Roberts's damages.

herself out as real estate professional and settlement for Property was conducted in Third Party's business office). Indeed, Roberts testified that her understanding of her purchase of the Property was that she completed it via the Third Party, in the tax sale. *See id.* Consequently, we disagree with Frempong that there was no evidence of the Third Party's involvement in this case, as Roberts's testimony is evidence, which the court deemed credible, and physical or documentary evidence of the Third Party's involvement is not required. *See Davis*, 194 A.3d at 605; *see also Parker Oil Co. v. Mico Petro and Heating Oil, LLC*, 979 A.2d 854, 856 (Pa. Super. 2009) ("As fact[-]finder, the judge has the authority to weigh[] the testimony of each party's witnesses and to decide which are most credible.") (citation omitted).

Fourth, insofar as Frempong complains that the Third Party pleaded guilty to federal tax fraud charges in 2019, and, therefore, could not have participated in the fraud, that the Third Party's arrest was in the news, and that the Third Party lived close in proximity to Roberts's residence, Frempong raises each of those claims for the first time on appeal, which he may not do. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *see also Lamm v. Fisher*, 903 A.2d 1259, 1262 n.3 (Pa. Super. 2006) (argument raised for first time in appellate brief renders contention waived on appeal).

Fifth, as to Frempong's argument, under an equitable theory of unclean hands, that Roberts's fraudulent actions render equitable relief inapplicable to her counterclaim, we conclude that the trial court's factual determination that

Roberts did not commit fraud and that she was, instead, the victim of fraud, is supported by the record and defeats Frempong's claim. *See De Lage Landen Servs., Inc.*, 903 A.2d at 590; *see also Greenwood*, 357 A.2d at 606; *see also* N.T. Motion *in Limine*/Non-Jury Trial, 5/15/23, at 24 (Roberts testifying "You're not going to say I did any fraud. [. . .] I did not do any fraud to [Frempong]. Someone did fraud to me. Okay? So[,] I didn't do any fraud to [Frempong]."). Indeed, Roberts's testimony supported her theory that she was the victim of fraud in a fraudulent tax sale where she confirmed there were back taxes owed on the Property since 1997 and noted that the Property was available for tax sale as of 2016. *See id.* at 12, 36, 46-47. Further, Roberts's testimony, which the court deemed credible, was that the Property sale was orchestrated by the Third Party holding herself out as a real estate professional and settlement for the Property was conducted in the Third Party's business office. *See id.* at 71. Thus, Frempong has failed to establish the applicability of the doctrine of unclean hands to Roberts's equitable claims where the evidence reflected that Roberts did not commit any fraud or deceit, or otherwise fail to deal fairly with Frempong and the Property. *See Morgan v. Morgan*, 193 A.3d 999, 1005 (Pa. Super. 2018) ("The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue.") (citation, quotation marks, and emphasis omitted). Accordingly, Frempong is not entitled to any relief.

Order affirmed. Judgment entered.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/30/2025</u>